JAMES CRAIG BURLEY *vs.* COMETS COMMUNITY YOUTH
CENTER, INC.[1]

No. 08-P-752.

Middlesex. September 21, 2009. - November 25, 2009.

Present: McHUGH, COHEN, & SIKORA, JJ.

*"Anti-SLAPP" Statute. Constitutional Law,* Right to petition government. *Libel and Slander. Practice, Civil,* Motion to dismiss, Attorney's fees, Costs.

In a civil action alleging defamation, arising from the act of an employee of the defendant skating rink of sending a letter that prohibited the plaintiff from entering the defendant's property, a Superior Court judge erred in allowing the defendant's special motion to dismiss pursuant to the "anti-SLAPP" statute, G. L. c. 231, § 59H, where the record did not establish that the plaintiff's claim was based solely on protected petitioning activity, in that, in addition to alleging defamation arising from the employee's sending of copies of the letter to the local police department and district court, the plaintiff's complaint also alleged defamation arising from public disclosures by "agents, servants and/or employees" of the defendant regarding the prohibition of the plaintiff from the defendant's property. [821-824]

CIVIL ACTION commenced in the Superior Court Department on July 23, 2003.

A special motion to dismiss was heard by *Sandra L. Hamlin,* J.

*Leonard M. Davidson* for the plaintiff.

*Jennifer Ellis Burke* for the defendant.

COHEN, J. The plaintiff appeals from the allowance of the defendant's special motion to dismiss under G. L. c. 231, § 59H, the "anti-SLAPP" statute.[2] Because we conclude that the defendant did not make the requisite threshold showing that the plaintiff's

---

[1]Doing business as West Suburban Arena.

[2]"SLAPP" is an acronym for "strategic litigation against public participation."

claims are based solely on the defendant's protected petitioning activity, we reverse.

*Background.* On July 23, 2003, the plaintiff, James Craig Burley, commenced this defamation action against Comets Community Youth Center, Inc. (Comets). The allegations contained in Burley's complaint,[3] insofar as they pertain to the conduct claimed to be defamatory, may be summarized as follows. On numerous occasions prior to March, 2003, Burley had skated at the West Suburban Arena (WSA), an ice skating rink then operated by Comets.[4] On or about March 15, 2003, the manager of the arena, John Conway, sent Burley a no-trespass letter, copies of which he also directed to the Natick police department and the Natick Division of the District Court Department. The letter stated that Burley was prohibited from entering the building or grounds of the WSA as a result of several complaints from parents concerning inappropriate behavior on Burley's part. The letter also stated that, should Burley be found on the grounds of the WSA without the prior permission of the manager or his designee, the Natick police department would be notified, and Burley would be removed and possibly arrested.[5] Furthermore, the complaint alleged that "agents, servants and/or employees of WSA have maliciously defamed Burley by publicly disclosing that Burley was 'banned' from the [a]rena for inappropriate behavior."[6]

Comets answered Burley's complaint, and for more than three years, the parties conducted discovery and prepared the

---

[3]The complaint contains two counts: Count I, asserting Burley's claim for defamation, and Count II, seeking a preliminary injunction to obtain prejudgment security. At the inception of the case, an injunction was put in place for a brief period of time but was dissolved when it was learned that Comets had adequate insurance coverage. We deal here only with the allegations contained in Count I.

[4]Comets operated the WSA until June, 2003.

[5]A copy of the letter appears as an exhibit to Burley's complaint. It reads as follows: "This letter is to inform you that as a result of several complaints from parents concerning inappropriate behavior on your part at the West Suburban Arena, you will be prohibited from entering the building or the grounds of the West Suburban Arena. Should you be found on the grounds without the prior permission of the Rink manager or his designee, the Natick Police Department will be notified and you will be removed and possibly arrested. Once again, if you are found on the grounds of the West Suburban Arena, including the parking lot, you will be brought to court on a complaint of trespassing."

[6]This allegation was made "upon information and belief."

case for trial. The parties filed a joint pretrial memorandum on August 30, 2006. Thereafter, the trial date was continued by order dated November 22, 2006. At the end of January, 2007, at about the same time that motions in limine were being filed in anticipation of the upcoming trial, Comets filed its special motion to dismiss. The motion was accompanied by a copy of a memorandum of decision and order dated August 12, 2005, in a Superior Court case in Norfolk County involving Burley (the Iorio case),[7] the deposition of John Conway and exhibits thereto, and Burley's answers to interrogatories.

Burley opposed Comets' special motion to dismiss, arguing that simply transmitting copies of the no-trespass letter to the police and the court did not constitute protected petitioning activity because Comets did not "seek redress" from these authorities. In addition, he argued that his complaint asserted other defamatory conduct that was outside the scope of protected petitioning activity, i.e., the alleged statements by Comets' employees to other individuals that Burley had been banned from the WSA due to inappropriate conduct. In support of his opposition, Burley submitted several deposition excerpts: Conway's testimony that he showed a copy of the no-trespass letter to the arena's director of figure skating, Jennifer Baker; Baker's testimony that she, in turn, told others about the no-trespass letter; and testimony by Donna Rozon that Baker told her that Burley "had a no trespass," "it was all taken care of," "the kids didn't have — nobody had to worry; that they addressed the situation."

In an order dated May 14, 2007, a judge of the Superior Court allowed Comets' special motion to dismiss, concluding that the issues presented were "virtually identical" to the ones presented in the Iorio case. Thereafter, pursuant to the anti-SLAPP statute, the judge awarded costs and attorney's fees to Comets in the amount of $60,265.54.

---

[7]Burley vs. Iorio Arena at Walpole, LLC, Civil Action No. 05-00014 (Norfolk Super. Ct. August 12, 2005). The Iorio case was a defamation case brought by Burley against a different ice skating rink that also had sent him a no-trespass letter and provided copies of the letter to the local police department and the Wrentham Division of the District Court Department. In the Iorio case, a judge of the Superior Court allowed the defendant's special motion to dismiss on the ground that sending copies of the no-trespass letter to the police and the court was protected petitioning activity because it was intended to provide "encouragement to the public officials that the situation should be reviewed."

*Discussion.* We review an appeal from a judge's decision on a special motion to dismiss under the anti-SLAPP statute to determine whether there was an abuse of discretion or an error of law. See *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 121 (2002); *MacDonald* v. *Paton*, 57 Mass. App. Ct. 290, 292-293 (2003). To prevail on a special motion to dismiss, the moving party must make a threshold showing, based on the pleadings and affidavits, that the claims against him are based solely on protected petitioning activities and that the claims have no substantial basis other than, or in addition to, the petitioning activities. *Wenger* v. *Aceto*, 451 Mass. 1, 5 (2008), citing *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 167-168 (1998). Once the moving party makes that showing, the burden shifts to the nonmoving party to prove, by a preponderance of the evidence, that "(1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party." *MacDonald* v. *Paton*, *supra* at 292, quoting from G. L. c. 231, § 59H. The nonmoving party's "burden only arises after a defendant shows that the lawsuit, or a count the complaint contains, is aimed at petitioning activity alone. Until then, there is no reason to terminate the lawsuit quickly." *Ehrlich* v. *Stern*, 74 Mass. App. Ct. 531, 537 (2009). "[T]he anti-SLAPP inquiry produces an all or nothing result as to each count the complaint contains. Either the count survives the inquiry or it does not, and the statute does not create a process for parsing counts to segregate components that can proceed from those that cannot." *Id.* at 536.

In the present case, if the only defamatory conduct alleged by Burley were the sending of copies of the no-trespass letter to the police and the court, we would agree with Comets that the complaint was subject to dismissal under the anti-SLAPP statute. Under the statute's broad definitions, petitioning activity "includes all 'statements made to influence, inform, or at the very least, reach governmental bodies — either directly or indirectly.' " *Ehrlich* v. *Stern*, *supra* at 535, quoting from *North Am. Expositions Co., Ltd. Partnership* v. *Corcoran*, 452 Mass. 852, 862 (2009). Thus, even though the sending of copies of the no-trespass letter to the governmental authorities was not a request for immediate action, the transmittal plainly was intended to inform these authori-

ties of the notice that had been sent to Burley and to set the stage for any later request for assistance with enforcement.

The difficulty here, however, is with the additional allegation in Burley's complaint that Comets' employees "maliciously defamed [him] by publicly disclosing that [he] was 'banned' from the Arena for inappropriate behavior." Comets' position is that this allegation makes no difference to the anti-SLAPP analysis because (1) discovery has revealed no support for the allegation; (2) any such disclosure was true, and hence not defamatory; and (3) any and all of the individuals who may have been told this information were other Comets' employees who "were the ones who would be calling the police" if Burley appeared at the premises.

In order to assess Comets' position, we begin with some general observations. The anti-SLAPP statute contemplates that, ordinarily, a special motion to dismiss is to be brought within sixty days of the service of the complaint, based on the pleadings and affidavits authorized by G. L. c. 231, § 59H, and that once the motion is made, all discovery will be stayed until it is decided. See *Donovan* v. *Gardner*, 50 Mass. App. Ct. 595, 601 (2000). Nevertheless, we have recognized that there may be exceptional cases where discovery may be required before the moving party is in a position to learn the facts that indicate that a special motion to dismiss is warranted. See *id.* at 602 n.12. In such a case, the judge may exercise his or her discretion to consider a late-filed anti-SLAPP motion.

When the judge does so, however, the relevant inquiry does not change. In assessing whether the moving party has met his or her threshold burden, the question for the judge remains only the nature of the conduct alleged by the plaintiff (is it, or is it not, protected petitioning activity) and not the merits of the case as it has developed during discovery. A special motion to dismiss under the anti-SLAPP statute is not intended to be a substitute for a motion for summary judgment; nor should it be used as a strategic vehicle for shifting the fees and costs incurred by the moving party during the course of discovery.[8] See *id.* at 602.

---

[8]Here, because we conclude that the special motion to dismiss should not have been allowed, we need not consider the propriety of the award to the defendant of attorney's fees and costs incurred over more than three years of litigation and amounting to more than $60,000.

That said, we conclude that there is no merit to Comets' arguments concerning Burley's additional allegation. Even if discovery material (and not simply the complaint) were to figure into the analysis, rather than revealing that the allegation is unsupported, discovery has corroborated it, as shown by the deposition excerpts presented by Burley in opposition to the special motion. Moreover, Comets' additional argument — that any such disclosure could not be found to be defamatory — goes to a substantive defense in the case and not to whether the conduct in question was protected petitioning activity.

Finally, we consider the significance of Comets' assertion that the only individuals who appear to have been told that Burley was banned for inappropriate behavior were other Comets' employees who would be expected to call the police if Burley violated the no-trespass letter. To the extent that Comets may be adverting to a conditional privilege defense, see generally Restatement (Second) of Torts §§ 593 et seq. (1977), its argument again relates to the substantive merits of Burley's claims and not to whether conveying this information to them was protected petitioning activity. To the extent that Comets contends that the statements were "related" to the protected petitioning activity of notifying the authorities, Comets has not made an adequate showing that the statements are entitled to protection under G. L. c. 231, § 59H. It has not been made to appear that all such statements were essentially "mirror images" of those communicated to the police and the court. See *Wynne* v. *Creigle*, 63 Mass. App. Ct. 246, 254 (2005). Nor has it been shown that all such statements were made in conjunction with its protected petitioning activity (for example, to facilitate further consideration and response by the police), as opposed to being "incidental observations that were not tied to the petitioning activity in a direct way." *Global NAPS, Inc.* v. *Verizon New England, Inc.*, 63 Mass. App. Ct. 600, 606-607 (2005). We note in this regard that Comets' brief does not refer to, nor have we located, record support for its basic assertions concerning the employment status and potential enforcement responsibilities of all the persons to whom the ban apparently was communicated. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Accordingly, on this record, we are not in a position to conclude that the alleged disclosure by Comets' employees that Burley was banned from the

arena for inappropriate behavior is possessed of the characteristics of petitioning activity.

*Conclusion.* Because Comets has failed to meet its threshold burden of showing that Burley's defamation claim is based solely on protected petitioning activity, its special motion to dismiss should have been denied. We emphasize that our decision relates only to the issue presently before us — the question of relief under the anti-SLAPP statute. Comets remains free to avail itself of other procedural mechanisms to raise its various arguments as to the merits of Burley's claims.

The judgment is reversed, the award of costs and attorney's fees is vacated, and the case is remanded to the Superior Court for further proceedings.

*So ordered.*