*112 Sullivan, J.
(concurring in the result). The motion judge denied the special motion to dismiss the plaintiffs’ defamation claim against the Steward defendants[1] because, in her judgment, the defendants failed to meet their burden to show that the count for defamation was based solely on petitioning activity. See Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167 (1998) (Duracraft) (moving party must make a threshold showing that the complaint is based on petitioning activity “alone”). Because the judge did not make a clear error of law or judgment in declining to dismiss the defamation claim with respect to the e-mail, I agree that the special motion to dismiss must be denied as to the e-mail. I do not agree that the statements made to the Boston Globe constituted solely petitioning activity. However, based on the “mirror image” doctrine, I also must agree that the statements to the Boston Globe are petitioning activity. I write separately to emphasize material differences in the reasons for which I arrive at these conclusions, reasons which impact both the standard of review of decisions on “anti-SLAPP” motions and the scope of protection afforded litigants in the Commonwealth under the First Amendment to the United States Constitution.
Standard of review. A threshold question is the proper application of the standard of review. We review the motion judge’s decision for an abuse of discretion. See Kobrin v. Gastfriend, 443 Mass. 327, 330-331 (2005) (Kobrin); Marabello v. Boston Bark Corp., 463 Mass. 394, 397 (2012) (Marabello).[2] Whether the appellate courts have functionally conducted (or should conduct) a “fresh and independent evaluation” of anti-SLAPP motions to dismiss, albeit under the umbrella of the abuse of discretion standard, is a different question, one left largely unanswered by existing precedent. See ante at 103. To be sure, an appellate court reviews errors of law de novo, and an error of law is an abuse of discretion. See Kobrin, supra at 330-331; Marabello, supra at 397. With some frequency the existence of petitioning activity has been decided as a matter of law on the basis of the complaint.[3] See Fabre v. Walton, 436 Mass. 517, 522-523 (2002); Office One, *113 Inc. v. Lopez, 437 Mass. 113, 122-123 (2002) (Office One, Inc.); Wenger v. Aceto, 451 Mass. 1, 5 (2008) (Wenger); North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 864-865 (2009) (Corcoran). Where the pertinent allegations suggest that there may be both petitioning activity and nonpetitioning activity, the motion must be denied. See Garabedian v. Westland, 59 Mass. App. Ct. 427, 432 (2003); Ehrlich v. Stern, 74 Mass. App. Ct. 531, 536-537 (2009) (Ehrlich); Burley v. Comets Community Youth Center, Inc., 75 Mass. App. Ct. 818, 821-822 (2009) (Burley).
In this case, we also have the moving parties’ affidavits. How must those affidavits be treated? The answer lies in the hornbook principle, as applicable in anti-SLAPP suits as in other areas of the law, that the judge may look to the entire record and is not required to credit a defendant’s affidavit. See Cadle Co. v. Schlichtmann, 448 Mass. 242, 250-251 (2007) (Cadle). In the context of an anti-SLAPP motion, this means that the judge is not required to accept at face value either party’s “self-serving characterization” of conduct as petitioning or nonpetitioning activity. See ibid. (holding that the judge was permitted to determine as a factual matter that the defendant had failed to meet his burden to show that the purpose in setting up a litigation Web site was petitioning rather than commercial).[4] In my view, this determination on appeal falls under the more deferential standard of review for abuse of discretion, id. at 250, that is, whether the motion judge *114 made “a clear error of judgment in weighing the factors relevant to the decision,. . . such that the decision [fell] outside the range of reasonable alternatives.” L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotation and citation omitted).
The defamation claim. Turning to the defamation claim, the complaint alleges and Walczak’s affidavit confirms that he sent an e-mail to all Carney Hospital employees. The e-mail contained a stern warning about patient care, hospital standards, and his reasons for the mass termination. There was no allegation or averment in this or any other affidavit that the e-mail was provided to the regulators, or that the regulators were told about it. The judge concluded that the Steward defendants ‘“have not shown how the statements in the email, communicated only to Carney Hospital employees, were intended to influence, inform, or reach, directly or indirectly, governmental agencies. . . . The statements cannot be considered petitioning activity merely because they communicated to the Hospital staff what remedial action the Hospital was taking as a response to a regulatory agency investigation.”
The judge did not abuse her discretion. As a matter of law, the hospital’s decision to terminate the employment of all employees in the adolescent psychiatric unit (unit) was conduct, not speech, and is not entitled to the protection of the anti-SLAPP statute. See Marabello, 463 Mass. at 398-400. The fact that the hospital explained its actions to its employees does not transform conduct into petitioning activity. A “tangential statement[ ]” that “concerns a topic that has attracted governmental attention ... does not give that statement the character contemplated by the statute.” Global NAPS, Inc. v. Verizon New England, Inc., 63 Mass. App. Ct. 600, 605, 607 (2005). That the e-mail may have been part of an over-all strategy to address the conditions in the unit and thereby avoid the wrath of the regulators is not enough. “[A]n over-broad construction of the anti-SLAPP statute would compromise the nonmoving party’s right to petition — the same right the statute was enacted to protect.” Kobrin, 443 Mass. at 335.[5]
It is not clear from the judge’s decision whether she did not credit Walczak’s affidavit or whether, even if she accepted it at *115 face value, she found the affidavit was insufficient to show that petitioning activity was the sole basis for the e-mail, or both. See Wenger, 451 Mass. at 5, quoting from Duracraft, 427 Mass. at 167-168 (movant must show that the claim “[is] based on ‘petitioning activities alone and ha[s] no substantial basis other than or in addition to the petitioning activities’ ”). The judge’s decision is properly sustained on either basis.
First, for the reasons stated above, the judge did not abuse her discretion to the extent that she declined to credit Walczak’s affidavit. See Cadle, 448 Mass. at 250. The judge considered the affidavit[6] and found it unpersuasive in tight of the complete absence of any evidence that the e-mail was sent to the regulators. In this factual context, the judge did not engage in a clear error in judgment in concluding that the affidavit, crafted after the fact for purposes of supporting the special motion, failed to sustain the defendants’ burden to show that Walczak engaged in petitioning activity. The statements in the affidavit concerning the defendants’ motives and beliefs are not relevant. “We care not whether a defendant seeking dismissal under the anti-SLAPP statute is ‘sincere’ in his or her statements; rather, our only concern, as required by the statute, is that the person be truly ‘petitioning’ the government in the constitutional sense.” Kobrin, 443 Mass. at 338 n.14.
Second, even if the judge were to give weight to Walczak’s statement that he hoped to influence the regulators (which she clearly did not in view of the lack of any indication that the regulators knew of the e-mail’s existence), or to simply accept the statements at face value, Walczak also stated that he “sent this email ... to communicate to the hospital employees what was happening.”[7] On its face, the e-mail served patient care and labor relations purposes separate and independent of any claimed at *116 tempt to influence regulators. The anti-SLAPP statute protects a narrow range of conduct based solely and exclusively on petitioning activity. See Ehrlich, 74 Mass. App. Ct. at 536-537. See also Duracraft, 427 Mass. at 167-168. Even if one were to accept the defendants’ view that the e-mail must be viewed as petitioning activity as a matter of law (which both the majority and I do not), the e-mail also served nonpetitioning purposes. Thus, the plaintiffs’ complaint “[did] not concern solely the defendants’ pursuit of legal rights.” Ayasli v. Armstrong, 56 Mass. App. Ct. 740, 748 (2002), quoting from Bell v. Mazza, 394 Mass. 176, 183 (1985).
For this reason above all others, the judge also correctly ruled as a matter of law that the motion should be denied. It bears remembering that the “sole purpose” doctrine came about as a judicial gloss — a gloss designed to save the statute from constitutional infirmity.[8] In Duracraft, 427 Mass. at 167, the Supreme Judicial Court “adopt[ed] a construction of [the words] ‘based on’ that would exclude motions brought against meritorious claims with a substantial basis other than or in addition to the petitioning activities implicated” (emphasis added). By limiting anti-SLAPP motions to those cases where the only basis for the plaintiffs’ complaint is the defendants’ nonfrivolous petitioning activity, the court resolved the “conundrum [that had] troubled judges and bedeviled the statute’s application” — that is, how to protect the defendants’ right to petition the government, provided the petition is not a sham, while at the same time also protecting an adverse party’s right to petition. Id. at 166-167. See Kobrin, 443 Mass. at 335.
The statements attributed to Walczak in the newspaper articles suffer from precisely the same defects as the e-mail. The judge found the statements to the Boston Globe to be tangential, “particularly when the defendants already were in communication with the agencies.” In addition, the Walczak affidavit states that his comments to the Globe were an appeal to the public, an understandable purpose in light of the potential impact of the allegations on the confidence of patients, donors, insurers, and *117 business partners, but still a nonpetitioning purpose.[9] On its face, the Walczak affidavit demonstrates that the statements to the press encompass substantial nonpetitioning purposes.[10]
It matters not that the statements to the press (like the e-mail) may have been part of an over-all strategic mission to influence regulators. See ante at 105. Nor does it matter, for First Amendment purposes, that a single act — the statements to the Globe — may arguably serve both petitioning and nonpetitioning purposes. If the conduct complained of serves a substantial nonpetitioning purpose (such as persuading patients, future patients, donors, future donors, insurers, and the public at large of the quality of patient care), the complaint must go forward. Otherwise, the scope of the anti-SLAPP statute would expand exponentially to include protected First Amendment petitioning activity. The result would be an interpretation of the statute that renders it constitutionally infirm. See Duracraft, 427 Mass. at 166-167; Kobrin, 443 Mass. at 335.
However, because I agree with the majority that the statements in the press, made in response to the Massachusetts Nurses’ Association’s comments on the terminations, were protected by the mirror image doctrine, I also must agree, based on our existing precedent, that the statements to the Globe acquired the status of protected petitioning activity. See Wynne v. Creigle, 63 Mass. App. Ct. 246 (2005). Contrast Cadle, 448 Mass. at 251 (“Here, nothing in the record would support a finding that the challenged statements made by Schlichtmann were either a response to statements that Cadle had made to the press or repetitions of statements initially made in a governmental proceeding”). Other than the brief reference in Cadle, the mirror image doctrine has not been considered in any depth by the Supreme Judicial Court, and its parameters have not been much explored by this court. Whatever those parameters may be, I concur with the majority that the fact that the hospital was responding to (not initiating) a *118 press inquiry, and that the response essentially mirrored the statements in the report prepared by Attorney Scott Harshbarger, compels the conclusion that this much of the claim is petitioning activity under existing precedent.
Which leads to the final conundrum — the ultimate disposition of the defamation claim. In Wenger, 451 Mass. at 9, the Supreme Judicial Court, without discussion, parsed a complaint, count by count, dismissing some counts under the anti-SLAPP statute and preserving others. This approach has borne some criticism, on the theory that parsing claims undermines the “sole purpose” doctrine and results in expensive and complicated litigation contrary to the purpose of the anti-SLAPP statute. See One Claim at a Time: The Inherent Problems with Piecemeal Application of the anti-SLAPP Statute, Vol. 11-n1 Mass. Bar Assn. Section Rev. (2009). Wenger remains good law, however, and we follow it.[11]
This case is different in that it involves a single count alleging two separate acts of defamation. One of our cases since Wenger has explicitly stated that “the anti-SLAPP inquiry produces an all or nothing result as to each count the complaint contains. Either the count survives the inquiry or it does not, and the statute does not create a process of parsing counts to segregate components from those that cannot.” Ehrlich, 74 Mass. App. Ct. at 536, and cases cited. Accord Burley, 75 Mass. App. Ct. at 821. The majority holds that the statements to the Globe could have as easily been pleaded as two counts rather than one, and that it would elevate form over substance to permit the count based on the statements to the Globe to go forward, thus distinguishing Ehrlich. Whether Wenger governs in this circumstance as well, or whether Ehrlich is the correct statement of the law turns, as does much of this case, on further clarification of the reach of the “sole purpose” doctrine first articulated in Duracraft.
Accordingly, I concur in the result solely because I agree with those portions of the majority opinion that hold that the e-mail was not petitioning activity and the statements to the Boston Globe were protected by the mirror image doctrine under existing precedent.

 Steward Carney Hospital, Inc. (Carney Hospital or hospital); Steward Hospital Holdings, LLC; Steward Health Care System, LLC; and William Walczak.

 See also Office One, Inc. v. Lopez, 437 Mass. 113, 121 (2002) (Office One, Inc.); Cadle Co. v. Schlichtmann, 448 Mass. 242, 250 (2002) (Cadle); Hanover v. New England Regional Council of Carpenters, 467 Mass. 587, 595 (2014).

 For example, where a complaint is based solely on the filing of a police report, the special motion to dismiss has been allowed as a matter of law. See Benoit v. Frederickson, 454 Mass. 148, 153 (2009); Keegan v. Pellerin, 76 *113 Mass. App. Ct. 186, 190 (2010). See also McLarnon v. Jokisch, 431 Mass. 343, 347 (2000) (application for an abuse prevention order). The cases cited ante at 103 arose as a question of law based on a review of the complaint. The sole exception is North Am. Exposition Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 854 & n.5 (2009), where the court supplemented its review of the allegations of the complaint, but with uncontested evidence only. This case alises in a different posture.

 Alternatively, there is the approach taken in Benoit v. Fredrickson, 454 Mass. at 154 n.7. In Benoit, the court cautioned against fact finding on the second prong of the two-part test. This caution makes sense in the context of ensuring that the applicable standard — whether the petitioning activity is utterly devoid of reasonable factual support or an arguable basis in law — is not usurped by a shadow trial on the merits on a motion to dismiss. The interest at stake in the first prong of the test — determining whether a defendant has met his burden of proving that his statements were solely for petitioning purposes — is a different one. However, even if a factual dispute were found to exist on the first prong, under the Benoit approach, the dispute itself would be the basis for denying the motion, because the existence of the dispute means that the defendants have not met their' burden to show that their conduct was solely for a petitioning purpose.

 It is particularly important to note that the e-mail went further than the report prepared by Attorney Scott Harshbarger and could be read to suggest that the fired employees were responsible for the incidents leading to the investigation. It is these statements in particular which the plaintiffs allege were defamatory.

 The affidavits were discussed at length in the motion hearing, and the judge stated on the record her intention to consider them.

 In his affidavit, Walczak stated that he sent the e-mail for the purpose of
“reaffirming Carney Hospital’s commitment to providing the best possible care to every patient that comes through the doors and explaining the reasons why I decided to terminate the employment of individuals who, in my view, had not lived up to that standard, I sent this email not only to communicate to the hospital employees what was happening, but to give assurances to the regulatory agencies who were in the process of determining whether Carney Hospital’s license to operate the Unit should be revoked that the deficiencies which has [ízc] been reported on the Unit *116 would not continue in that Unit or be tolerated in any other part of Carney Hospital” (emphasis added).

 The cases emphasizing the importance of the “sole purpose” test are legion. See, e.g., Fabre v. Walton, 436 Mass. at 524; Office One, Inc., 437 Mass. at 122; Cadle, 448 Mass. at 250; Wenger, 451 Mass. at 5; Fustolo v. Hollander, 455 Mass. 861, 865 (2010); Ehrlich, 74 Mass. App. Ct. at 536-537.

 In his affidavit, Walczak stated that he spoke to the newspaper because “I felt that it was important that I explain to the media, and hence to the general public and the agencies themselves, why Carney Hospital took the actions that it did, and what our plans were for ensuring the safety and care of our' patients going forward” (emphasis added).

 In this regard, there is a “consequential distinction” between Harshbarger and his law firm (Proskauer defendants) and the Steward defendants. See ante at 105. The Proskauer defendants were liked to assist in influencing the regulators. The Steward defendants had safety, labor relations, institutional, and commercial interests apart from the regulatory proceedings.

 Indeed, the defamation count here is but one of many counts, and has been considered separately at all stages of the litigation in accordance with Wenger.