NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1125

MARK KON[1] & others[2]

vs.

BETH FISHMAN & others;[3] CRAIG RODGERS, defendant-in-counterclaim.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs and the defendant-in-counterclaim appeal from a Superior Court judge's order denying their respective motions to dismiss the defendants' counterclaims under the anti-SLAPP statute, G. L. c. 231, § 59H.  The judge concluded that the moving parties had not met their burden of showing that the counterclaims were based on the moving parties' petitioning activities alone and had no substantial basis other than or in

---

[1] Individually and as a member of the Cambridge Tower Corporation and Cambridge Tower Small Owners' Association, LLC.

[2] Rodolfo Ruben Rosales and David Hermann, individually and as members of the Cambridge Tower Corporation and Cambridge Tower Small Owners' Association, LLC.

[3] Margaret Mishara; Jesse Zorfas; Palm Realty, LLC; Alacrity LLC; and Alacrity Limited Partnership.

addition to their petitioning activities.  We agree and thus affirm.

Background.  Cambridge Tower Corporation (CTC) is a for-profit corporation that owns and operates Cambridge Tower, a mixed-use building containing eighty-eight residential units. The plaintiffs, Mark Kon, Rodolfo Ruben Rosales, and David Hermann, and the defendant-in-counterclaim, Craig Rodgers, are minority shareholders of CTC.[4]  The individual defendants, Beth Fishman, Margaret Mishara, and Jesse Zorfas, are CTC's directors and collectively own and control fifty-two percent of CTC's shares.[5]

In July 2021 the defendants scheduled a special meeting of the shareholders to vote on a proposed amendment to CTC's bylaws, which would have allowed non-natural persons to own shares in CTC.  According to the minority shareholders, the defendants called for the vote because they were planning to sell their shares in CTC to a real estate investment company (buyer) for more than $20 million and the buyer was insisting on

---

[4] We will refer to the plaintiffs and Rodgers together as "minority shareholders," except where it is necessary to differentiate among them.

[5] The other defendants are corporate entities that hold the individual defendants' shares in CTC.  For simplicity we will use the term "defendants" to refer interchangeably to the individual defendants and to the named defendants collectively.

the amendment as a condition of the sale.  The minority shareholders assert that not only did the defendants conceal this from the other shareholders, they actively tried to mislead the other shareholders into believing that the amendment was in everyone's interest.  The defendants for their part acknowledge that they sought the amendment to "assuage" the buyer, but characterize the amendment as "ministerial."  In particular, they assert that the amendment would have merely resolved a discrepancy in the corporate documents, as CTC's restated articles of organization had been amended long ago to authorize corporate ownership of shares.

On July 23, 2021, a few days before the scheduled meeting, the plaintiffs brought the underlying lawsuit claiming, among other things, that the defendants breached their fiduciary duties to the plaintiffs and CTC.  The complaint contains numerous allegations of wrongdoing by the defendants, including that they improperly called the meeting to force a vote on the proposed amendment, illegally leveraged their controlling interest in CTC to remove the plaintiffs from the board of directors, and delayed necessary repairs to the Cambridge Tower parking garage.

Over two years after the plaintiffs filed their complaint, the defendants brought counterclaims against them and Rodgers

3

for breach of fiduciary duty,[6] tortious interference with prospective contractual relations, and abuse of process.  The plaintiffs and Rodgers filed separate motions to dismiss the counterclaims under the anti-SLAPP statute, which the judge denied after hearings on each motion.  Details regarding the nature of the counterclaims are reserved for later discussion.

Discussion.  Resolution of a special motion to dismiss under the anti-SLAPP statute proceeds in two stages.  At stage one, the moving party must "make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the [party's] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities."  Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539, 555 (2024), quoting Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167-168 (1998).  If the moving party meets this burden, the nonmoving party must show at stage two that the moving party's petitioning activity "was devoid of any reasonable factual support or any arguable basis in law" and caused the nonmoving party "actual injury."  Bristol Asphalt Co., supra at 557, quoting G. L. c. 231, § 59H.  Our

---

[6] This claim was brought as a cross claim on behalf of CTC, but the parties refer to it as a counterclaim.  For simplicity we will do the same.

4

review of a judge's denial of an anti-SLAPP motion is de novo. See Bristol Asphalt Co., supra at 560.

Here, the plaintiffs argue that the counterclaims are based solely on their acts of filing and prosecuting this lawsuit, which are indisputably petitioning activities. See 477 Harrison Ave., LLC v. JACE Boston, LLC, 483 Mass. 514, 520 (2019) ("Commencement of litigation is quintessential petitioning activity"). In his brief, Rodgers similarly argues that the counterclaims are based solely on his petitioning activity of assisting with prosecution of the lawsuit. In evaluating these arguments, we must assess the counterclaims separately to determine whether each count has a substantial basis in conduct that is not petitioning.[7] See Bristol Asphalt Co., 493 Mass. at 551, 553-554. If the count has a substantial nonpetitioning basis, it will survive dismissal even if a portion of it "could be construed as being based on . . . petitioning alone." Id. at 554.

1. Breach of fiduciary duty. One of the central allegations supporting the defendants' claim of breach of fiduciary duty is that the minority shareholders interfered with

_____

[7] As the parties appear to agree, the counterclaims for civil conspiracy, declaratory judgment, and violation of G. L. c. 231, § 6F, are derivative of the counterclaims sounding in tort. We therefore do not address them separately.

5

the defendants' efforts to secure financing for the repairs to the Cambridge Tower parking garage. Specifically, the defendants allege that Cambridge Savings Bank (bank) verbally committed to enter into a loan agreement; the bank agreed to close on the condition that the minority shareholders sign a consent form authorizing the defendants to enter into the loan agreement; instead of simply signing the form, the minority shareholders "heavily edited it and added self-serving language" parroting their allegations in this lawsuit; and, as a result, the bank declined to provide the loan. According to the counterclaim, the minority shareholders' motive was "to gain personal advantage -- increased influence in CTC's corporate governance and change of the [c]orporation's status."

This alleged conduct is distinct from the filing and prosecution of the lawsuit and is not petitioning activity. In arguing otherwise, the plaintiffs characterize their conduct as innocent, asserting that the dispute about the consent form "took place within the four corners of the lawsuit" because their edits to the form were intended merely to ensure they did not abandon or waive their claims. But the motive for the plaintiffs' conduct is a disputed factual issue that is not properly resolved at this stage of the analysis. Rather, the question at this stage is "only the nature of the conduct

6

alleged . . . (is it, or is it not, protected petitioning activity) and not the merits of the case." Burley v. Comets Community Youth Ctr., Inc., 75 Mass. App. Ct. 818, 822 (2009). See Bristol Asphalt Co., 493 Mass. at 556-557, 561 n.21. Here, the nature of the conduct alleged is that the minority shareholders obstructed the financing in bad faith to obtain the corporate governance changes they desired -- this constitutes a substantial nonpetitioning basis for the counterclaim. See Cadle Co. v. Schlichtmann, 448 Mass. 242, 250, 254 (2007) (statements published by defendants on website in hopes of "gaining a tactical advantage in an ongoing legal proceeding" not petitioning activity, notwithstanding "defendants' self-serving characterization of the Web site as a 'public forum'").

Rodgers raises a different argument, which is that the allegations described above could not provide a basis for a breach of fiduciary duty claim against him because only the plaintiffs were asked to sign the consent form. But the counterclaim alleges that Rodgers was "a key player" in the "efforts to thwart bank financing for repairs" and that he and the plaintiffs "acted in concert and in furtherance of the common design of breaching their fiduciary duty to CTC to block financing for" the repairs. As further alleged, Rodgers's involvement is evidenced by his financing of the lawsuit and his

7

statement to Zorfas that "any cooperation in obtaining financing for the . . . repairs would be contingent upon a resolution of the pending litigation on terms favorable to" the minority shareholders. We are unpersuaded by Rodgers's argument that this statement was petitioning activity because it was merely communicating a settlement offer. Focusing on the conduct complained of, see Burley, 75 Mass. App. Ct. at 822, the allegation is that Rodgers's statement was part of a scheme to obstruct the financing to gain leverage for the demands raised in the lawsuit. Thus, as pleaded, the counterclaim against Rodgers has a substantial nonpetitioning basis.

2. Tortious interference with prospective contractual relations. This counterclaim alleges that the minority shareholders engaged in a "misinformation campaign" against the defendants to discourage the buyer and other interested parties from purchasing the defendants' shares in CTC. As part of the campaign, the minority shareholders allegedly sent false and defamatory e-mail messages to other shareholders to mislead them about the impact of the proposed amendment to the bylaws and the impact of the impending sale of the defendants' shares. The campaign allegedly culminated in the filing of this lawsuit and "accomplished [its] ultimate purpose" -- causing the buyer "to back out of the transaction which was on the cusp of closing."

8

This alleged conduct is not petitioning activity, as it mostly predated the filing of the lawsuit and was geared not toward reaching the government but toward convincing the buyer to abandon the deal.  The plaintiffs' sole argument to the contrary is that neither the counterclaim nor the evidence submitted below suggests that any of the events predating the lawsuit "caused the deal to fall through."  But again, at this stage all we must decide is whether the conduct complained of has a substantial nonpetitioning basis.  See Burley, 75 Mass. App. Ct. at 822.  Disputed factual issues such as causation are appropriately left to be resolved in the course of the litigation.  See Bristol Asphalt Co., 493 Mass. at 556-557, 561 n.21; Burley, supra.

Rodgers adds that the counterclaim should be dismissed as to him because it does not allege that he personally made any of the communications to the other shareholders.  We are unpersuaded because the counterclaim alleges that Rodgers and the plaintiffs "acted in concert and in furtherance of the common design of tortiously interfering with a prospective contractual relationship to stop the sale."  If this were not enough, the allegation of Rodgers's involvement is supported by an affidavit from Ian Gillespie, the buyer's principal, in which he avers that he spoke to Rodgers in August 2021 about the sale

9

and Rodgers "insisted that all of CTC's shareholders have equal voting power, regardless of the number of shares that they own," and suggested that the buyer "would never be able to elect CTC's board of directors" even if it had "a majority interest in the corporation."[8]  This alleged interference with the sale does not constitute petitioning activity.

3.  Abuse of process.  An "abuse of process claim will always be, at least in part, based on a special movant's petitioning activities," namely, the invocation of process.  477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 169 (2017).  But this does not mean that no abuse of process claim can survive a motion to dismiss under the anti-SLAPP statute.  For example, "a cognizable claim can . . . involve a subsequent misuse of such process . . . that is not itself petitioning activity," such as an "attempt to use an invocation of process to extort [the] opposing party."  Id.  To withstand dismissal, the claim must allege "conduct separate and independent from the

_____

[8] Contrary to Rodgers's contention, it is well established that affidavits can be considered at stage one of the anti-SLAPP analysis.  See Bristol Asphalt Co., 493 Mass. at 555, quoting Duracraft Corp., 427 Mass. at 167 (whether moving party has made threshold showing determined by "the pleadings and affidavits").  We do not agree that footnote 21 of Bristol Asphalt Co. limits this principle.  That footnote concerned the standard of review that applies on appeal and did not put any limitations on a judge's authority to consider affidavits at stage one.  See Bristol Asphalt Co., supra at 561 n.21.

10

petitioning activity"; "allegations of an ulterior motive unsupported by conduct independent of the petitioning activity" will not suffice.  Keystone Freight Corp. v. Bartlett Consol., Inc., 77 Mass. App. Ct. 304, 314 (2010).

Here, the counterclaim fairly alleges that the lawsuit was part of a broader scheme by the minority shareholders to extort the defendants to agree to new corporate governance terms.  As in Keystone Freight Corp., 77 Mass. App. Ct. at 315, the counterclaim alleges wrongful conduct that occurred "before, after, and separate" from the invocation of process.  In particular, the counterclaim alleges that the minority shareholders' scheme included spreading misinformation to mislead other shareholders, communicating with the buyer to interfere with the sale, and conditioning their cooperation in obtaining financing on the defendants' capitulating to unreasonable settlement demands.

In Keystone Freight Corp., 77 Mass. App. Ct. at 315, we held that the plaintiff's abuse of process claim had a substantial basis in addition to the defendant's filing of a collection action, where the plaintiff alleged that the defendant engaged in fraudulent billing practices before filing the action, and then after filing the action made a settlement offer that was "arguably consistent with an attempt . . . to

11

coerce payment of its inflated bill."  This case is analogous to Keystone Freight Corp. and unlike Hidalgo v. Watch City Constr. Corp., 105 Mass. App. Ct. 148 (2024), on which Rodgers relies. In Hidalgo, supra at 149, we held that the defendant's counterclaim for abuse of process was based solely on the plaintiff's filing of a prior lawsuit, and the defendant's allegations that the plaintiff "had an improper subjective motive for filing [the] lawsuit" did not affect the analysis because motive for filing suit is not separately actionable, id. at 151.  In contrast, here, the defendants do not rely only on allegations of ulterior motive but, as in Keystone Freight Corp., supra at 314, allege "conduct separate and independent from the" filing of the lawsuit.  That separate conduct constitutes a substantial basis other than or in addition to the minority shareholders' petitioning activities.

Conclusion.  That part of the order dated July 19, 2024, denying the plaintiffs' and Rodgers's special motions to dismiss under the anti-SLAPP statute is affirmed.[9]

So ordered.

By the Court (Shin, Grant & Hershfang, JJ.[10]),

*Paul Little*

Clerk

Entered: November 21, 2025.

---

[9] The plaintiffs' and Rodgers's requests for appellate attorney's fees are denied.

[10] The panelists are listed in order of seniority.