## James Dickey vs. James Warren.

No. 07-P-1432.

Suffolk. May 15, 2008. - October 28, 2009.

Present: Perretta, Duffly, & Grainger, JJ.[1]

*"Anti-SLAPP" Statute. Constitutional Law,* Right to petition government, Libel and slander. *Libel and Slander.*

In a civil action in which the plaintiff, a landlord, alleged that the defendant, a former tenant, had defamed the plaintiff during an administrative hearing to determine whether the plaintiff's residential apartment building should be condemned, the judge properly granted the defendant's special motion to dismiss pursuant to G. L. c. 231, § 59H, where the defendant satisfied his burden of demonstrating that the claims against him were based on his petitioning activity alone and had no substantial basis other than or in addition to that activity, while the plaintiff failed to satisfy his subsequent burden of demonstrating that the defendant's petitioning activities were devoid of any reasonable factual support or any arguable basis in law. [590-592]

Civil action commenced in the Superior Court Department on September 26, 2006.

A special motion to dismiss was heard by *Peter M. Lauriat,* J.

*James Dickey,* pro se.

*Erin Whelan Pennock* for the defendant.

Perretta, J. James Dickey, the former landlord of James Warren, brought an action in the Superior Court alleging that Warren had defamed him during a hearing conducted by the city of Boston's inspectional services department (department) to determine whether Dickey's residential apartment building should be condemned. Warren responded with a special motion to dismiss pursuant to G. L. c. 231, § 59H, commonly referred to as the

---

[1]Justice Perretta participated in the deliberation of this case and authored this opinion prior to her retirement.

"anti-SLAPP statute."[2] The judge concluded that Warren had satisfied his burden of demonstrating that his remarks were protected petitioning activity, while Dickey had failed to demonstrate that Warren's petitioning activity was "devoid of 'any reasonable factual support or any arguable basis in law.' " *Fisher* v. *Lint*, 69 Mass. App. Ct. 360, 363 (2007), quoting from *Donovan* v. *Gardner*, 50 Mass. App. Ct. 595, 599 (2000). We agree and affirm the dismissal of Dickey's complaint.

1. *The facts.* We set out the facts related in the judge's memorandum of decision as supported and supplemented by the parties' materials included in the record before us on Dickey's appeal. On December 15, 2002, Warren became a residential tenant in a three-family building owned by Dickey and situated at 97 Mount Ida Road in the Dorchester section of Boston. Several months later, in March or early April, 2003, Warren's roommate informed Dickey that there was a problem with the furnace for their apartment. According to Dickey, the furnace was repaired the night of the roommate's complaint.

On August 25, 2003, the department granted Dickey a permit to repair and replace the siding on the building. Dickey began the permitted work on September 1, 2003. On September 16, while the permitted work was in progress, Edward Kennedy, an investigator with the department's division of investigation and regulatory enforcement, inspected the building and discovered many violations of the State Sanitary Code. See generally 105 Code Mass. Regs. §§ 410.831 et seq. (1997) (governing dwellings unfit for human habitation and condemnation and hearing process). Kennedy concluded that the entire building was unfit for human habitation and ordered that it be condemned and that its occupants vacate the premises "forthwith," i.e., September 16, 2003.

The department conducted a hearing on the condemnation on October 7, 2003.[3] As set out in the department's notice of decision, both Kennedy and Warren testified in support of the condemnation of the building. In an affidavit submitted to the Superior Court in connection with his special motion to dismiss,

---

[2]SLAPP is an acronym for Strategic Lawsuits Against Public Participation.

[3]Neither we nor the judge have had the benefit of a transcript of the condemnation hearing.

Warren stated that soon after moving into 97 Mount Ida Road he noticed a "severe soot and rodent problem with the apartment" and that he "testified against [Dickey]" at the condemnation hearing and at a trial on his civil complaint against Dickey.[4] Warren further stated in his affidavit that "[a]s a result of the conditions cited by the [department], I was ordered to vacate the apartment." The conditions cited by Kennedy, the department's inspector, which led to the condemnation of the building as unfit for human habitation, and the order to vacate the building immediately, were based on Kennedy's personal observations made during his inspection of the property on September 16, 2003.

There is nothing in Warren's affidavit that describes or otherwise intimates the contents or substance of his testimony at the condemnation hearing. However, according to the memorandum of law submitted by his attorney in support of his special motion to dismiss, Warren "indicated" at the condemnation hearing that "he moved out of the third floor apartment because of a problem with the furnace." Warren's affidavit also recites that the testimony he gave at the hearing and at trial on his complaint against Dickey was, "to the best of [his] knowledge, true."

Dickey averred in his affidavit in opposition to the special motion to dismiss that he was informed by Warren's roommate in late March or early April, 2003, that there was a problem with the furnace for their apartment and that he repaired the problem that same day. He also related that in May or June of 2003, he asked Warren why he had not been informed earlier about Warren's complaint regarding the furnace. According to Dickey, Warren explained that he was able to block a heating vent in his bedroom and that "as far as [Warren] was concerned . . . it fixed the problem for him."

According to Dickey, Warren "indicated" at the condemnation hearing held on October 7, 2003, that "he moved out of [his] apartment because of problems with the apartment." Dickey further maintains that Warren later testified at the 2004 trial on his action against Dickey that he was living at 97 Mount Ida Road on September 16, 2003, when he was forced to vacate the

---

[4]Warren brought an action against Dickey to recover damages based on the substandard condition of the apartment he had rented. According to Warren, the jury returned a verdict in his favor and awarded him monetary damages.

apartment *on that day* because the house was "boarded-up by the City of Boston."

2. *The pertinent provisions of G. L. c. 231, § 59H.* The first paragraph of G. L. c. 231, § 59H, as amended by St. 1996, c. 450, § 245, provides, in pertinent part:

> "In any case in which a party asserts that the civil claims . . . against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss. . . . The court shall grant such special motion, unless the party against whom such special motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law *and* (2) the moving party's acts caused actual injury to the responding party. In making its determination, the court *shall* consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based" (emphasis added).[5]

The final paragraph of § 59H, inserted by St. 1994, c. 283, § 1, provides in pertinent part:

> "As used in this section, the words 'a party's exercise of its right of petition' shall mean any written or oral statement made before or submitted to a legislative, executive, or judicial body, *or any other governmental proceeding*; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, *or any other governmental proceeding*; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding . . ." (emphasis added).

3. *The judge's decision.* Dickey has not included a copy of his defamation complaint in the record appendix, but the motion

---

[5]We construe the word "shall" as used in the language quoted above as requiring a judge to consider the pleadings and parties' affidavits but not precluding consideration of any other materials presented and determined to be relevant in deciding the § 59H motion.

judge set out in his memorandum of decision the gist of that complaint and Dickey's argument:

> "Dickey argues that, in light of Warren's testimony at [the trial on his complaint against Dickey], it is clear that his testimony at the condemnation hearing was untrue and defamatory. Specifically, Dickey highlights Warren's testimony that he moved out of his third floor apartment, *presumably* before the house was condemned, because of problems with the furnace. Dickey also points out that, at trial, Warren testified that he moved out of Dickey's house on the day it was boarded up by the City. As a result of Warren's testimony, Dickey alleges that he suffered significant damages." (Emphasis added.)

The judge further noted that Dickey's defamation complaint against Warren was based *"only"* on the statements Warren made at the condemnation hearing. The judge considered numerous appellate decisions involving G. L. c. 231, § 59H,[6] and concluded that Warren had met his burden of demonstrating that Dickey's claims against him were based on his petitioning activities and had no substantial basis other than or in addition to those activities.

Next, the judge took up the question whether Dickey had met his burden of demonstrating, by a preponderance of the evidence, that Warren's exercise of his right to petition "was devoid of any reasonable factual support or any arguable basis in law *and . . .* caused actual injury to [Dickey]" (emphasis added). G. L. c. 231, § 59H. The judge concluded that Dickey had failed to meet his burden of proof on the first of the two requisite conditions, even assuming that any inaccurate statement made by Warren at the hearing caused Dickey actual harm.

In short, the judge concluded that Warren had met his burden of proof while Dickey had not.

4. *Discussion.* We take up Dickey's many and somewhat diffuse arguments to determine whether the judge's allowance of Warren's special motion to dismiss was based on an abuse of

---

[6]See, e.g., *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. 156, 161 (1998); *Baker* v. *Parsons*, 434 Mass. 543, 553-554 (2001); *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 122 (2002); *Kobrin* v. *Gastfriend*, 443 Mass. 327, 338 (2005).

discretion or other error of law. See *Kobrin* v. *Gastfriend*, 443 Mass. 327, 330-331 (2005). In so doing, we are mindful of the burden-shifting procedure most recently repeated in *Benoit* v. *Frederickson*, 454 Mass. 148, 152-153 (2009).

a. *Warren's burden of proof.* Our analysis begins with the judge's determination that Warren met his burden of demonstrating that Dickey's claims against him were based on his "petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Benoit* v. *Frederickson*, *supra* at 152, quoting from *Wenger* v. *Aceto*, 451 Mass. 1, 5 (2008). Based on the provisions of the final paragraph of G. L. c. 231, § 59H, see part 2, *supra*, and the materials before us, we see no error in the judge's conclusion that Warren's statements "were . . . , at a minimum, made at a 'governmental proceeding.' " Dickey's argument to the contrary is refuted by the notice of decision from the Boston inspectional services department. It bears the seal of the city of Boston as well as the name of the mayor, and provides ample support for the conclusion that Warren's remarks were made during a "governmental proceeding." See generally 105 Code Mass. Regs. § 410.831.

Citing *Kobrin* v. *Gastfriend*, 443 Mass. at 331-332, Dickey further argues that because Warren did not reside at 97 Mount Ida Road on October 7, 2003, the date of the hearing, his statements were not made for purposes of seeking redress and, therefore, were not protected petitioning activity. He contends that Warren "was acting only as a witness for the City of Boston." Dickey misreads *Kobrin*.

In *Kobrin*, the defendant had been retained as an expert by the Board of Registration in Medicine to assist in its investigation of the plaintiff's medical practices. The board ultimately dismissed the charges against the plaintiff, and he then sued the defendant based on statements the defendant had made in the form of an affidavit submitted to the board. When the defendant sought the shelter of G. L. c. 231, § 59H, the plaintiff argued that the defendant had not been "petitioning the government, but rather was providing paid assistance to the government in its case." *Id.* at 330. The court denied the defendant the protection afforded by § 59H and held that § 59H "is designed to protect overtures to the government by parties petitioning in their status

as citizens. It is not intended to apply to those performing services for the government as contractors."[7] *Id.* at 332. Dickey's misguided reading of *Kobrin* would make every tenant of the building on September 16, 2003, a potential defendant in a defamation action had he or she chosen to testify at the condemnation hearing. Warren was a party affected by the condemnation order. See 105 Code Mass. Regs. § 410.851 (1997) (requiring that all "affected parties" be given notice of "the date, time and place of the hearing" and providing that "affected parties shall include the occupants of all affected premises").

Warren was also required to demonstrate that Dickey's claims against him "have no substantial basis other than or in addition to his petitioning activities," *Benoit* v. *Frederickson*, 454 Mass. at 152, quoting from *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. 156, 167-168 (1998). The judge stated in his memorandum of decision that "Dickey's complaint makes clear that the sole basis for his defamation claim is Warren's alleged false testimony at the condemnation hearing," and although Dickey failed to include a copy of his defamation complaint in the record appendix, his claims are apparent from the materials that were included as well as from the arguments set out in his brief.

We see no abuse of discretion or other error of law in the judge's conclusion that Warren met his burden of showing that Dickey's claims against him were based on his petitioning activity alone and had no substantial basis other than or in addition to that activity.

b. *Dickey's burden of proof.* Once Warren satisfied his burden of proof, the burden shifted to Dickey to show by a preponderance of the evidence that Warren's "petitioning activities were devoid of any reasonable factual support or any arguable basis in law and that the petitioning activities caused [Dickey] actual harm." *Benoit* v. *Frederickson, supra* at 153. The judge concluded

---

[7]As noted by the court in *Kobrin, supra* at 332 n.8:

"No definition of the phrase ['a party's exercise of its right of petition'] will encompass every case that falls within the statute's reach, and some difficult factual situations will have to be assessed on a case-by-case basis. What we seek to do is to limit the statute's protection, in accordance with the legislative intent, to the type of petitioning activity the Constitution envisions in which parties petition their government as citizens, not as vendors of services."

that because Dickey admitted that "there were problems with the furnace in Warren's apartment . . . regardless of Warren's alleged inaccurate statement on the timing of his move," Dickey failed to meet his burden of showing that Warren's testimony at the condemnation hearing was, as required by G. L. c. 231, § 59H, "devoid of any factual support or any arguable basis in law." The judge's conclusion is supported by statements made by Dickey in his affidavit.

Although the judge assumed for purposes of decision that Warren's act caused Dickey actual injury, he noted that "[i]t is unclear, from the record before this court, how crucial Warren's testimony was in upholding the condemnation." We agree and further conclude that Dickey also failed to meet his burden of proof of showing that Warren's acts caused him any "actual injury."

Dickey sets out in his affidavit the various expenses he incurred as a result of the department's condemnation order. However, as shown by the department's decision, the condemnation of Dickey's building was based on the numerous violations of the State Sanitary Code observed by Kennedy during his inspection of the building on September 16, 2003. None of the cited violations that resulted in the condemnation of the building concerned the furnace.[8]

On the state of the record before us, we see no error in the judge's conclusion that while Warren had satisfied his burden of proof, Dickey had failed to meet his and that, consequently, Warren was entitled to the dismissal of Dickey's action against him.

*Judgment affirmed.*

---

[8]The numerous violations cited by the department in its decision included soffits and boards missing from the exterior, exposing the interior to the elements, rodents, and squirrels; stairs in danger of collapse; the second means of egress blocked by garbage and debris; the lack of a working fire detection system in the front and rear units; the basement completely filled with debris and no access to gas, electrical, or water shut-off valves in the case of an emergency; and the side and rear yard filled with garbage, debris, fire hazards, and heavy rodent infestation.