NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-717                                         Appeals Court

LYNNE BLANCHARD & others[1] vs. STEWARD CARNEY HOSPITAL, INC., &
others.[2]

No. 14-P-717.

Suffolk.      January 14, 2015. - February 24, 2016.

Present: Katzmann, Sullivan, & Blake, JJ.

"Anti-SLAPP" Statute. Constitutional Law, Right to petition
     government. Practice, Civil, Standing, Motion to dismiss.

Civil action commenced in the Superior Court Department on
May 24, 2013.

A special motion to dismiss was heard by Linda E. Giles, J.

Jeffrey A. Dretler (Katharine A. Crawford & Joseph W.
Ambash with him) for the defendants.
Dahlia C. Rudavsky for the plaintiffs.

KATZMANN, J. In this case we consider whether the

defendants' special motion to dismiss the plaintiffs' defamation

---

[1] Gail Donahoe, Gail Douglas-Candido, Kathleen Dwyer, Linda
Herr, Cheryl Hendrick, Kathleen Lang, Victoria Webster, and
Nydia Woods.

[2] Steward Hospital Holdings, LLC; Steward Health Care
System, LLC; and William Walczak.

claim pursuant to G. L. c. 231, § 59H, widely known as the
"anti-SLAPP"[3] statute, was properly denied.  The central question
is whether, during a period of crisis when Steward Carney
Hospital (Carney Hospital or hospital) faced the loss of its
license to operate an in-patient adolescent psychiatric unit
(unit) because of purported patient abuse and neglect,
statements quoted in a newspaper made by the president of the
hospital, and an electronic mail message (e-mail) the president
sent to hospital staff announcing the dismissal of unnamed
employees in the unit under review, constituted protected
petitioning activity.  A judge in the Superior Court denied the
motion because she found that the statements upon which the
claim was based did not qualify as protected petitioning
activity and, therefore, the defendants could not seek
protection of the anti-SLAPP statute.  We conclude that the
statements quoted in the newspaper constitute protected
petitioning activity, but that the internal e-mail does not.
Accordingly, we affirm in part and reverse in part.

Background.  The key facts of this case, as derived from
the judge's decision below, the newspaper articles at issue,
affidavits by those involved in the investigation, testimony in
a related arbitration proceeding (see note 4, infra), and

---

[3] "'SLAPP' is an acronym for Strategic Lawsuit Against
Public Participation."  Office One, Inc. v. Lopez, 437 Mass.
113, 121 n.13 (2002).

relevant reports, are as follows.  The plaintiffs are all registered nurses (RNs) who had been working in the unit for a number of years.  In April, 2011, complaints were made concerning four incidents of alleged patient abuse or neglect within the unit.  None of the alleged incidents involved abuse or neglect of a patient by any of the plaintiffs (or any other RN).  The incidents were reported to the Department of Mental Health (DMH), the Department of Public Health (DPH), and the Department of Children and Families (DCF) by unit RNs or other staff.  The unit is licensed by DMH and DPH.  After the April complaints, the agencies, especially DMH, were regularly on site to investigate the incidents and to determine whether to revoke the license to operate the unit.  The director of licensing at DMH reported making unannounced visits on different occasions, including weekends and holidays, so that she could "see in fact what was happening."

In late April, 2011, in response to the incidents, Carney Hospital placed all mental health counselors, all regularly assigned unit RNs (including the plaintiffs), and two managers on paid administrative leave.  The hospital then hired Attorney Scott Harshbarger and his law firm, Proskauer Rose, LLP (Proskauer defendants), to conduct an overall management review of the unit and make recommendations.  Harshbarger interviewed unit staff, including each of the plaintiffs.  The plaintiffs

identified specific issues that affected patient care and areas for improvement.  On May 13, 2011, Harshbarger made an oral report of his conclusions to the hospital's then president, William Walczak; Harshbarger submitted his written report on May 26, 2011.  In the report, which made no specific allegations of abuse or neglect against any of the individual plaintiffs or any member of the nursing staff, Harshbarger recommended that the hospital "rebuild" the unit by replacing all of its personnel. The report cited "serious weaknesses" in the supervisory and managerial structure of the unit, including, inter alia, "lack of a clear reporting structure, lack of accountability, oversight of patient care and quality, patient and staff safety concerns, and a flawed and rarely invoked disciplinary process." The report cited a "code of silence" as one of the underlying sources and causes of operational and performance dysfunction. "This code results in a failure to report issues or concerns, and to reinforce a general attitude that reporting can trigger retaliation, intimidation, and/or be ignored or unsupported by others."  The report concluded that "it would be prudent to replace the current personnel in order to ensure quality care" for the patients.

The day that Walczak received Harshbarger's report, he sent a letter to each plaintiff terminating her for her "conduct at

work."[4]  On May 27, 2011, Walczak sent an e-mail to all hospital staff, which stated in pertinent part:

> "As you all know, Carney Hospital has a rich tradition of providing excellent care to our patients.  Our performance on national quality and safety standards is exceptional, and in many cases superior to competing hospitals.  The reason for this performance is simple -- you[,] the employees and caregivers at Carney [Hospital], are dedicated to providing the best possible care to every patient that comes through our doors.  It is your dedication that makes Carney Hospital such a special place.

> "Recently, I have become aware of alleged incidents where a number of Carney [Hospital] staff have not demonstrated this steadfast commitment to patient care.  I have thoroughly investigated these allegations and have determined that these individual employees have not been acting in the best interest of their patients, the hospital, or the community we serve.  As a result, I have terminated the employment of each of these individuals."

The following day, on May 28, 2011, the Boston Globe published an article stating that Walczak said he had hired Harshbarger to investigate an allegation that an employee had allegedly sexually assaulted a teenager on the locked adolescent

---

[4] In their complaint against the hospital, two related entities, and Walczak (Steward defendants), alleging defamation, the plaintiffs stated that the Massachusetts Nurses Association, a union representing the plaintiffs, had filed grievances on their behalf, that the hospital had denied those grievances, and that an arbitrator had "found that [the Steward defendants] had violated the [collective bargaining agreement] by discharging the grievants."  According to the complaint, the arbitrator stated that "the concept of collective guilt and responsibility does not suffice to establish just cause to terminate any particular member of the group," and ordered reinstatement, removal of any allegations or findings of wrongdoing from the grievants' personnel files, and payment to them of all lost back wages and benefits, with interest.  The complaint stated that the Steward defendants have appealed the award and have not reinstated any of the plaintiffs.

psychiatry unit, and that Harshbarger had recommended "to start over on the unit."  The article included Walczak's statement that Harshbarger's report "described 'serious concerns about patient safety and quality of care.'"  The article reported that Walczak further stated, "We will have top-notch employees replace those who left.  My goal is to make it the best unit in the state."  In the article, a spokesman for the Massachusetts Nurses Association, a union representing the plaintiffs, said that the "hospital fired 29 employees, including 13 nurses who are members of the union."

In June, 2011, DMH issued reports on the incidents, finding wrongdoing by a single mental health counsellor for the first three incidents and finding improper actions by unspecified staff for the fourth incident.  In a June 22, 2011, Boston Globe article, it was reported that the firing of twenty-nine nurses and mental health counsellors at Carney Hospital followed five complaints of abuse or neglect in the adolescent psychiatry unit, not just the one complaint as initially disclosed, and that four of the complaints had been validated.  While declining to provide details on the cases, Walczak was quoted in the article as stating that "[t]he Harshbarger report indicated that it wasn't a safe situation."  The article explained that Walczak based his decision to fire the entire staff "on an investigation by former Attorney General Scott Harshbarger and his law firm."

The article quoted a letter from the Massachusetts Nurses Association to Carney Hospital nurses as stating that the nurses "adamantly deny any allegations of wrongdoing."

On May 24, 2013, the plaintiffs filed their defamation claims against the Proskauer defendants[5] and against Carney Hospital, two related entities, and Walczak (collectively, Steward defendants).[6] Relevant to the instant appeal, pursuant to the anti-SLAPP statute, the Steward defendants filed a special motion to dismiss count 3 of the complaint (defamation), which alleged that Walczak "made false and defamatory statements about the plaintiffs to the general public in his remarks in the

---

[5] Counts 4 and 5 of the complaint were against the Proskauer defendants, for defamation and infliction of emotional distress. The defamation claim was based on Harshbarger's statements in his written report and oral presentation to the Steward defendants. The Proskauer defendants filed a special motion to dismiss the defamation claim pursuant to the anti-SLAPP statute. The judge allowed this motion, finding that the statements contained in Harshbarger's report, in the context in which they were made, constituted petitioning activity protected under G. L. c. 231, § 59H. Subsequently, all claims against the Proskauer defendants were dismissed with prejudice on the parties' stipulation; judgment entered for the Proskauer defendants on May 27, 2014.

[6] Counts 1-3 of the plaintiffs' complaint are against the Steward defendants. Of these, only count 3 (defamation) is at issue in this appeal. At the motion hearing, the Steward defendants waived their motion to dismiss counts 1 and 2 pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), subject to renewal as a motion for summary judgment. (Count 1 alleges retaliatory discharge based on whistleblower activity; count 2 alleges violations of G. L. c. 119, § 51A, for the discharge of two of the plaintiffs after they reported abuse or neglect of patients on the unit.)

Boston Globe articles of May 28, 2011, and June 22, 2011," and "made false and defamatory statements about the plaintiffs to Hospital staff in his email of May 27, 2011." The judge denied this motion, finding that neither Walczak's statements to the Boston Globe nor his e-mail to the hospital staff constituted protected petitioning activity. The Steward defendants now appeal from the denial of their motion.

Discussion. 1. Overview. a. The anti-SLAPP statute. The anti-SLAPP statute, G. L. c. 231, § 59H, "protects the 'exercise of [the] right of petition under the constitution of the United States or of the [C]ommonwealth,' by creating a procedural mechanism, in the form of a special motion to dismiss, for the expedient resolution of so-called 'SLAPP' suits." Office One, Inc. v. Lopez, 437 Mass. 113, 121 (2002) (Office One, Inc.). "In the preamble to 1994 House Doc. No. 1520, the Legislature recognized that . . . 'there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances.'" Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161 (1998) (Duracraft). Under the "well-established [two-part] burden-shifting test," Hanover v. New England Regional Council of Carpenters, 467 Mass. 587, 595 (2014), "[t]o invoke the statute's protection, the special movant[s], [here, the Steward defendants, must] show, as

a threshold matter, through pleadings and affidavits, that the claims against [them] are . . . 'based on' [their] petitioning activities alone and have no substantial basis other than or in addition to [their] petitioning activities." Office One, Inc., supra at 122, citing Duracraft, supra at 167-168.  Wenger v. Aceto, 451 Mass. 1, 5 (2008) (Wenger).  This is the first prong of the test.  Under the second prong, if the special movants make such a showing, the burden then shifts to the nonmoving party to demonstrate by a preponderance of the evidence that the moving party's activities were "devoid of any reasonable factual support or any arguable basis in law" and that the petitioning activities caused actual injury.  Benoit v. Frederickson, 454 Mass. 148, 152-153 (2009) (Benoit), quoting from G. L. c. 231, § 59H.

"In order to determine if statements are petitioning, we consider them in the over-all context in which they were made." North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 862 (2009) (Corcoran).  "'[P]etitioning' has been consistently defined to encompass a 'very broad' range of activities in the context of the anti-SLAPP statute."  Id. at 861, citing Duracraft, supra at 161-162.  "The statute identifies five types of statements that comprise 'a party's exercise of its right of petition':

'[1] [A]ny written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; [3] any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; [4] any statement reasonably likely to enlist public participation in an effort to effect such consideration; or [5] any other statement falling within constitutional protection of the right to petition government.' G. L. c. 231, § 59H." (Emphasis added.)

Cadle Co. v. Schlichtmann, 448 Mass. 242, 248 (2007) (Cadle Co.). The second category is of particular relevance to the instant case.

b. Standard of review. As has been stated, we review the judge's decision to grant the special motion to dismiss for abuse of discretion or error of law. See Marabello v. Boston Bark Corp., 463 Mass. 394, 397 (2012); Hanover v. New England Regional Council of Carpenters, 467 Mass. at 595. We note that while this formulation appears in various anti-SLAPP decisions, there are other cases where it is absent. See, e.g., Corcoran, supra, 452 Mass. 852; Benoit, 454 Mass. 148; Ehrlich v. Stern, 74 Mass. App. Ct. 531 (2009) (Ehrlich). In any event, with respect to the first prong of the test -- whether conduct as alleged on the face of a complaint qualifies as protected petitioning activity -- it does not appear that the courts have deferred to the motion judge but rather have made a fresh and

independent evaluation.  See, e.g., Corcoran, 452 Mass. at 863-864 (discussing Cadle Co., 448 Mass. 242 [2007]); Plante v. Wylie, 63 Mass. App. Ct. 151, 160-161 (2005) (Plante).  Where the motion judge's determination of the second prong of the two-part test does not implicate credibility assessments, it is arguable that appellate review should be similarly de novo.  See, e.g., Benoit, 454 Mass. at 154 n.7 (discussing the appropriate standard of review with respect to the analysis of the second prong of the two-part test).[7]

We conclude that whether we review the judge's denial of the motion to dismiss de novo or with discretion, the ruling was in error with respect to the statements to the Boston Globe, but was not in error with respect to the e-mail sent to hospital employees.

2.  Standing.  At the outset we briefly address and reject the plaintiffs' standing argument.  The plaintiffs contend that

_____

[7] In Benoit, the Supreme Judicial Court explained:

"The anti-SLAPP statute requires the judge to consider the pleadings and supporting and opposing affidavits.  The question to be determined by a judge in deciding a special motion to dismiss is not which of the parties' pleadings and affidavits are entitled to be credited or accorded greater weight, but whether the nonmoving party has met its burden (by showing that the underlying petitioning activity by the moving party was devoid of any reasonable factual support or arguable basis in law, and whether the activity caused actual injury to the nonmoving party)."

454 Mass. at 154 n.7.

the anti-SLAPP statute does not apply because Walczak is not personally aggrieved by the agencies' actions and was not petitioning them on his own behalf.  Keegan v. Pellerin, 76 Mass. App. Ct. 186, 191-192 (2010), is dispositive on this issue.  Here, Walczak, who engaged in petitioning activity on behalf of the hospital while he was its president, is protected by the anti-SLAPP statute because "when a nongovernmental person or entity is the petitioner, the statute protects one who is engaged to assist in the petitioning activity under circumstances similar to those this record reveals."  Id. at 192, citing Plante, 63 Mass. App. Ct. at 156-157.  See Office One, Inc., 437 Mass. at 121-124.  See also Corcoran, 452 Mass. 852 (2009) (underlying suit named defendants' principal, whose statements were challenged, as individual defendant).[8]  Walczak thus has standing.

3.  The statements to the Boston Globe.  By way of overview, we note our conclusion, discussed below, that the

---

[8] The cases upon which the plaintiffs rely to contest standing -- Kobrin v. Gastfriend, 443 Mass. 327, 332 (2005); Fisher v. Lint, 69 Mass. App. Ct. 360, 364-365 (2007); and Moriarty v. Mayor of Holyoke, 71 Mass. App. Ct. 442, 447 (2008) -- were specifically distinguished by the Keegan court because those cases "rest on the commonsense principle that a statute designed to protect the constitutional right to petition has no applicability to situations in which the government petitions itself."  Keegan v. Pellerin, 76 Mass. App. Ct. 186, 192 (2010). This is not a case in which the government was petitioning itself; rather, Walczak was petitioning on behalf of his employer, the hospital.  See ibid.

judge erred in concluding that Walczak's statements to the Boston Globe "can[not] be considered petitioning activity under Massachusetts law." We disagree with the stark contrast the judge drew between the Proskauer defendants' statements in the report and the statements the Steward defendants made in the Boston Globe articles. The judge, citing Kobrin v. Gastfriend, 443 Mass. 327, 333 (2005) (Kobrin), for the proposition that the anti-SLAPP statute applies only where a "party seeks some redress from the government," found it "clear that the statements in Harshbarger's report constitute petitioning activity in that they were aimed at persuading the regulatory agencies involved not to revoke Carney Hospital's license." The judge noted that, in response to DMH's threat to close the unit, Harshbarger was recruited and was required to "interface with the various regulatory agencies and personnel on behalf of Carney Hospital and develop remedies so that the Hospital could retain its license and prevent the Unit from being closed." The pleadings and affidavits indicate that the Steward defendants' overarching goal was the same as that of the Proskauer defendants: to ensure that the hospital retained its license and to prevent the unit from being closed.[9] The strategy was to

---

[9] The affidavit of Michael R. Bertoncini, deputy general counsel of one of the Steward defendants during the relevant time period, explained, "The leadership of [his client] and Carney Hospital believed that swift and decisive action was

take a comprehensive approach to fixing the problems at the unit to demonstrate to DMH that the unit should maintain its license. In short, with respect to the statements to the Boston Globe, we do not discern a consequential distinction between the conduct of the Steward defendants and the Proskauer defendants. Walczak's statements were made and designed to achieve the same goal and also qualify as protected petitioning activity.

a.  Specifically, the parties disagree as to whether Walczak's statements in the Boston Globe articles on May 28, 2011, and June 22, 2011, qualify as protected petitioning activity.  We conclude, as this court did in Wynne v. Creigle, 63 Mass. App. Ct. 246, 254 (2005) (Creigle), that Walczak's statements "were sufficiently tied to and in advancement of" the maintenance of the license to operate the unit.  In Creigle, there were two independent bases on which the defendant's statements to the newspaper were found to be protected petitioning activity.  One basis was that the statements "were sufficiently tied to and in advancement of" the defendant's

---

necessary to ensure the safety of patients in the Unit, to respond to the concerns of the DMH/DCF personnel on the scene, and to work with and persuade the relevant regulatory agencies not to suspend Carney Hospital's license to operate the Unit and not to close the Unit."  Bertoncini also stated that his client and the hospital hoped that the hiring of Harshbarger to conduct the review and the "corresponding response would provide clear and convincing evidence and support for the position that the Unit should not lose its license to operate, should not be closed[,] and should be given the opportunity to effect a comprehensive remedy."

petition for benefits then under consideration by the Legislature, and, "thus, they fall within the ambit of statements made 'in connection with' legislative proceedings within the meaning of G. L. c. 231, § 59H, and constitute protected petitioning activity on that basis." Ibid. The second basis was that the context in which the defendant's statements to the newspaper occurred was as a response to the materials the plaintiff had earlier provided to the newspaper, and the fact that the defendant's statements were "essentially mirror images" of statements she had made in an earlier governmental investigation of the plaintiff. Ibid. In Cadle Co., 448 Mass. at 251, the court further emphasized the importance of context when, in distinguishing Creigle, it noted that unlike Creigle, in Cadle Co., there was "nothing in the record [to] support a finding that the [defendant's] challenged statements . . . were either a response to statements that [the plaintiff] had made to the press or repetitions of statements initially made in a governmental proceeding."

We similarly conclude from the content of the Boston Globe articles, particularly the June 22 article, and from Walczak's affidavit, which was not challenged by the plaintiffs, that the "defendant's statements were not unsolicited," but, rather, were responsive. In his affidavit, Walczak states that he "understood that representatives from the nurses' union were

commenting to the media on the terminations and that the media was also seeking commentary from current and former officials from the very regulatory agencies who were in the process of reviewing Carney Hospital's licensing status.  As such, I felt that it was important that I explain to the media, and hence to the general public and the agencies themselves, why Carney Hospital took the actions that it did, and what our plans were for ensuring the safety and care of our patients going forward." The relevant Boston Globe articles include statements and perspectives from the nurses' representatives that demonstrate that they were actively informing reporters about the nurses' side of the story, denying any allegations of wrongdoing. Harshbarger noted in his affidavit that there was public pressure on the agencies to close the unit and withdraw its license.  Walczak's comments, when viewed in this context, qualify as protected petitioning activity because the investigation was ongoing, and it is clear that DMH, which was regularly on site at the hospital, would be paying attention, or at least would have access to these articles.  If Walczak did not respond, there would have been a serious risk that the situation would be reported in a manner that did not take into account the Steward defendants' perspective.  Walczak's statements to the Boston Globe were designed to communicate to the regulatory agencies that the hospital was taking action to

avoid losing its license to operate the unit. Even within the articles at issue here, professionals in the local health care arena, including some former and current officials of the reviewing agencies, commented on and evaluated Walczak's course of action, commending the serious steps he took to address the incidents, and noting DMH's approval of his actions. Indeed, in Walczak's affidavit, he stated that it was his

> "sincere belief that [his] comments to the media would reach the regulators with the message that Carney Hospital had taken the incidents very seriously, implemented immediate remedial action, and developed a plan of action, all of which would contribute to convincing the agencies that patient safety was a priority and that the Unit should remain licensed and open."

With the agencies continuously monitoring the situation and the unavoidable publicity that developed around it, the media essentially became a venue to express the perspectives of each side; as such, the Boston Globe articles were available to, and likely considered by, the regulatory agencies. The judge erred in concluding that the statements to the Boston Globe were not protected activity on the ground that the Steward defendants, both directly and through Harshbarger, "already were in communication with the agencies regarding their investigation." This conclusion ignored Harshbarger's averments regarding those communications. His affidavit stated, "At this point, DMH's investigation was ongoing and the possibility that the Unit's license to operate would be revoked and the Unit would be closed

was still not only being considered, but highly likely.  There was some public pressure on the agencies to close the Unit and withdraw the necessary license."

Walczak's statements in the Boston Globe describing the actions the hospital had taken -- particularly where there was ongoing public pressure on the agencies to close the unit and to withdraw the hospital's license to operate the unit -- were important affirmations, as they came from the president of the hospital himself in support of the urgent goal of influencing DMH to preserve the license, and were thus legitimate protected activity.  Cf. Benoit, 454 Mass. at 153 (motion judge erred in concluding that petitioning activities were not "legitimate").  In attempting to reach and educate through the media the opponents in the public who had been pressuring the agencies to revoke the license, Walczak's statements possessed the characteristics of petitioning activity.  Contrast Burley v. Comets Community Youth Center, Inc., 75 Mass. App. Ct. 818, 823-824 (2009) (Burley) (statements made to the defendant's employees that the plaintiff was banned from a skating rink for inappropriate behavior were not protected petitioning activity where there was no link shown between the employees and the relevant governmental body).

In context and in totality, Walczak's statements to the Boston Globe were in furtherance of the overriding strategic

mission of bringing to bear upon the regulatory decisionmakers the seriousness of the hospital's effort to reform the institution. As such, the Steward defendants have satisfied their burden of making a threshold showing that the plaintiffs' "claims [are] 'based on' [the] petitioning activit[y] alone and have no substantial basis other than or in addition to [the] petitioning activit[y]." Office One, Inc., 437 Mass. at 122, citing Duracraft, 427 Mass. at 167-168. Contrast Global NAPS, Inc. v. Verizon New England, Inc., 63 Mass. App. Ct. 600, 605 (2005) (Global NAPS, Inc.). That the statements in the media were not made directly to the regulatory agencies does not remove them from protected petitioning activity, given that the ultimate audience was those agencies. Walczak's statements to the Boston Globe were protected petitioning activity because they were made "to influence, inform, or at the very least, reach governmental bodies -- either directly or indirectly" (emphasis added). Corcoran, 452 Mass. at 862, quoting from Global NAPS, Inc., 63 Mass. App. Ct. at 605.

We also conclude that Walczak's statements in the Boston Globe articles qualify as protected petitioning activity on the alternative basis that they are "essentially mirror images" of statements in the report. In essence, the plaintiffs argue that in order to qualify as "mirror images," the statements in the Boston Globe and the report must be identical. The case law,

however, indicates that the contested statements do not have to be an exact match but rather must be only "essentially" mirror images of the protected statements.  Creigle, 63 Mass. App. Ct. at 254.  See Burley, 75 Mass. App. Ct. at 823.  We interpret the qualifier "essentially" as requiring only that the statements be close to or very similar to the protected statements.  While the report is significantly more thorough and detailed, Walczak's statements maintain the same tone and content, summarizing the report to respond succinctly and effectively to press inquiries and statements by the nurses' representatives.  Walczak's statements to the Boston Globe convey the content of the report, which the hospital commissioned specifically to assure the investigating agencies that it was taking the requisite action to fix the problem.  Taken in context, Walczak's repetition of the report's content to the media also possessed the characteristics of petitioning activity.  See Creigle, supra at 253-254.

b.  Our focus now shifts to the plaintiffs, because even though we conclude that with respect to the statements to the Boston Globe, the plaintiffs' claim was "based on" the defendants' protected petitioning activity, the plaintiffs have the opportunity to defeat the special motion to dismiss the defamation count based on those statements by showing, "by a preponderance of the evidence, that . . . the defendants'

petitioning activity [was] devoid of any reasonable factual [or legal] support . . . and that . . . the activity caused the plaintiffs actual harm." Office One, Inc., 437 Mass. at 123. See Duracraft, 427 Mass. at 165; Wenger, 451 Mass. at 5, citing G. L. c. 231, § 59H; Chiulli v. Liberty Mut. Ins., Inc., 87 Mass. App. Ct. 229, 233-234 (2015). See also Baker v. Parsons, 434 Mass. 543, 554-555 (2001) (Baker) (to defeat a special motion to dismiss defamation claims, the plaintiff had the burden of showing "by a preponderance of evidence that the defendants lacked any reasonable factual support for their petitioning activity").

The plaintiffs have failed to show that the defendants' petitioning activity, as constituted by the statements to the Boston Globe, was devoid of factual or legal support.[10] "Because the plaintiffs failed to show that the petitioning activity in issue was devoid of any reasonable factual basis or basis in law, it is not necessary to reach the question whether the activity caused the plaintiffs actual injury." Office One Inc., 437 Mass. at 124. See Creigle, 63 Mass. App. Ct. at 255. See

---

[10] The plaintiffs acknowledge that "no such showing was made -- or attempted" because "they in fact supported Steward's advocacy goal: the preservation of the Unit's license." We do not agree that this explains the plaintiffs' silence on this point. While the plaintiffs may have had an interest in preservation of the license, they did not share the goal of staffing the unit with new staff. It was thus incumbent upon the plaintiffs to show the absence of factual or legal support for the statements they assert were defamatory.

also Dickey v. Warren, 75 Mass. App. Ct. 585, 592 (2009). In drafting G. L. c. 231, § 59H, the "Legislature intended to immunize parties from claims 'based on' their petitioning activities," Duracraft, 427 Mass. at 167, and we conclude that the claims in the instant case concerning the Boston Globe articles are exactly the type that the Legislature had in mind. See Baker, 434 Mass. at 551 (noting that defamation is the "most popular SLAPP cause of action," the court concluded that the "initial showing by the defendants that the claims against them were based on their petitioning activities alone is not defeated by the plaintiff's conclusory assertion that certain statements made by the defendants in petitions to government officials constitute defamation" [quotation and citation omitted]).

4. The e-mail sent to Carney Hospital staff. We turn now to the e-mail that Walczak sent on May 27, 2011, to the Carney Hospital staff. In that e-mail, he noted the hospital's "rich tradition of providing excellent care to our patients," that he had "become aware of the alleged incidents where a number of Carney [Hospital] staff have not demonstrated this steadfast commitment to patient care," "that these individual employees have not been acting in the best interest of their patients, the hospital, or the community we serve," and that "[a]s a result, I have terminated the employment of each of these individuals." In his affidavit filed in the litigation below, Walczak avers

that the e-mail was sent "not only to communicate to the hospital employees what was happening, but to give assurances to the regulatory agencies who were in the process of determining whether Carney Hospital's license to operate the Unit should be revoked that the deficiencies which has [sic] been reported on the Unit would not continue in that Unit or be tolerated in any other part of Carney Hospital."[11]

Regarding whether the e-mail could qualify as petitioning activity, the Superior Court judge ruled: "With respect to the email which Walczak sent to the internal employees of Carney Hospital, this communication cannot be considered petitioning activity protected by G. L. c. 231, § 59H. The Steward Defendants have not shown how the statements in the email, communicated only to Carney Hospital employees, were intended to influence, inform, or reach, directly or indirectly, governmental agencies. See Global NAPS, Inc., 63 Mass. App. Ct. at 605." (Emphasis added.)

During the hearing on the anti-SLAPP motion to dismiss, the judge appropriately indicated that she could "look at the[]

---

[11] Walczak's affidavit further states:

"On May 27, 2011, I sent an email to all Carney Hospital employees reaffirming Carney Hospital's commitment to providing the best possible care to every patient that comes through the doors and explaining the reasons why I decided to terminate the employment of individuals who, in my view, had not lived up to that standard."

affidavits." There was no allegation or averment in Walczak's affidavit, or in any of the other affidavits presented to the judge, that the e-mail sent to the Carney Hospital staff was provided to the regulators, or that the regulators were told about it. That the e-mail may have been part of an over-all strategy to address the conditions in the unit in the hope of influencing the regulators is not sufficient to qualify as petitioning activity where there is no evidence in the record that the e-mail was transmitted to the regulators or that they were informed of that communication. In sum, we cannot say that the judge erred in her determination that the Steward defendants had "not shown [that] the statements in the email, communicated only to Carney Hospital employees," qualified as protected petitioning activity.[12] Compare Burley, 63 Mass. App. Ct. at 823 (moving party failed to show that statements to employees were made "in conjunction with its protected petitioning activity").

Conclusion. The order of the Superior Court is reversed insofar as it denied the Steward defendants' special motion to dismiss count 3 of the plaintiffs' complaint (defamation) as to

---

[12] Having determined that the Steward defendants have not satisfied the first prong of the two-part test, we need not address the second prong regarding proof of factual or legal support.

Walczak's statements to the Boston Globe.  In all other respects the order is affirmed.[13,14]

<u>So ordered</u>.

---

[13] See <u>Wenger</u>, 451 Mass. at 2, 9 (denying a special motion to dismiss with respect to a G. L. c. 93A claim and allowing the special motion to dismiss as to malicious prosecution and abuse of process claims).  Under the circumstances here, where the e-mail and statements to the Globe were distinct actions clearly set forth in the defamation count and could readily have been the subject of separate counts, the complaint differs from that presented in <u>Ehrlich</u>, 74 Mass. App. Ct. at 534, where such delineation was absent.  But see <u>Burley</u>, 75 Mass. App. Ct. at 821-824.

[14] As count 3 survives in part, the Steward defendants' motion for attorney's fees and costs pursuant to the anti-SLAPP statute is denied.

SULLIVAN, J. (concurring in the result).  The motion judge denied the special motion to dismiss the plaintiffs' defamation claim against the Steward defendants[1] because, in her judgment, the defendants failed to meet their burden to show that the count for defamation was based solely on petitioning activity. See Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167 (1998) (Duracraft) (moving party must make a threshold showing that the complaint is based on petitioning activity "alone"). Because the judge did not make a clear error of law or judgment in declining to dismiss the defamation claim with respect to the e-mail, I agree that the special motion to dismiss must be denied as to the e-mail.  I do not agree that the statements made to the Boston Globe constituted solely petitioning activity.  However, based on the "mirror image" doctrine, I also must agree that the statements to the Boston Globe are petitioning activity.  I write separately to emphasize material differences in the reasons for which I arrive at these conclusions, reasons which impact both the standard of review of decisions on "anti-SLAPP" motions and the scope of protection afforded litigants in the Commonwealth under the First Amendment to the United States Constitution.

---

[1] Steward Carney Hospital, Inc. (Carney Hospital or hospital); Steward Hospital Holdings, LLC; Steward Health Care System, LLC; and William Walczak.

Standard of review.  A threshold question is the proper application of the standard of review.  We review the motion judge's decision for an abuse of discretion.  See Kobrin v. Gastfriend, 443 Mass. 327, 330-331 (2005) (Kobrin); Marabello v. Boston Bark Corp., 463 Mass. 394, 397 (2012) (Marabello).[2] Whether the appellate courts have functionally conducted (or should conduct) a "fresh and independent evaluation" of anti-SLAPP motions to dismiss, albeit under the umbrella of the abuse of discretion standard, is a different question, one left largely unanswered by existing precedent.  See ante at    .  To be sure, an appellate court reviews errors of law de novo, and an error of law is an abuse of discretion.  See Kobrin, supra at 330-331; Marabello, supra at 397.  With some frequency the existence of petitioning activity has been decided as a matter of law on the basis of the complaint.[3]  See Fabre v. Walton, 436

---

[2] See also Office One, Inc. v. Lopez, 437 Mass. 113, 121 (2002) (Office One, Inc.); Cadle Co. v. Schlichtmann, 448 Mass. 242, 250 (2002) (Cadle); Hanover v. New England Regional Council of Carpenters, 467 Mass. 587, 595 (2014).

[3] For example, where a complaint is based solely on the filing of a police report, the special motion to dismiss has been allowed as a matter of law.  See Benoit v. Frederickson, 454 Mass. 148, 153 (2009); Keegan v. Pellerin, 76 Mass. App. Ct. 186, 190 (2010).  See also McLarnon v. Jokisch, 431 Mass. 343, 347 (2000) (application for an abuse prevention order).  The cases cited ante at    arose as a question of law based on a review of the complaint.  The sole exception is North Am. Exposition Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 854 & n.5 (2009), where the court supplemented its review of the

Mass. 517, 522-523 (2002); Office One, Inc. v. Lopez, 437 Mass. 113, 122-123 (2002) (Office One, Inc.); Wenger v. Aceto, 451 Mass. 1, 5 (2008) (Wenger); North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 864-865 (2009) (Corcoran). Where the pertinent allegations suggest that there may be both petitioning activity and nonpetitioning activity, the motion must be denied. See Garabedian v. Westland, 59 Mass. App. Ct. 427, 432 (2003); Ehrlich v. Stern, 74 Mass. App. Ct. 531, 536-537 (2009) (Ehrlich); Burley v. Comets Community Youth Center, Inc., 75 Mass. App. Ct. 818, 821-822 (2009) (Burley).

In this case, we also have the moving parties' affidavits. How must those affidavits be treated? The answer lies in the hornbook principle, as applicable in anti-SLAPP suits as in other areas of the law, that the judge may look to the entire record and is not required to credit a defendant's affidavit. See Cadle Co. v. Schlichtmann, 448 Mass. 242, 250-251 (2007) (Cadle). In the context of an anti-SLAPP motion, this means that the judge is not required to accept at face value either party's "self-serving characterization" of conduct as petitioning or nonpetitioning activity. See ibid. (holding that the judge was permitted to determine as a factual matter that the defendant had failed to meet his burden to show that the

---

allegations of the complaint, but with uncontested evidence only. This case arises in a different posture.

purpose in setting up a litigation Web site was petitioning rather than commercial).[4]  In my view, this determination on appeal falls under the more deferential standard of review for abuse of discretion, id. at 250, that is, whether the motion judge made "a clear error of judgment in weighing the factors relevant to the decision, . . . such that the decision [fell] outside the range of reasonable alternatives."  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotation and citation omitted).

The defamation claim.  Turning to the defamation claim, the complaint alleges and Walczak's affidavit confirms that he sent an e-mail to all Carney Hospital employees.  The e-mail contained a stern warning about patient care, hospital standards, and his reasons for the mass termination.  There was no allegation or averment in this or any other affidavit that

---

[4] Alternatively, there is the approach taken in Benoit v. Fredrickson, 454 Mass. at 154 n.7.  In Benoit, the court cautioned against fact finding on the second prong of the two-part test.  This caution makes sense in the context of ensuring that the applicable standard -- whether the petitioning activity is utterly devoid of reasonable factual support or an arguable basis in law -- is not usurped by a shadow trial on the merits on a motion to dismiss.  The interest at stake in the first prong of the test -- determining whether a defendant has met his burden of proving that his statements were solely for petitioning purposes -- is a different one.  However, even if a factual dispute were found to exist on the first prong, under the Benoit approach, the dispute itself would be the basis for denying the motion, because the existence of the dispute means that the defendants have not met their burden to show that their conduct was solely for a petitioning purpose.

the e-mail was provided to the regulators, or that the regulators were told about it. The judge concluded that the Steward defendants "have not shown how the statements in the email, communicated only to Carney Hospital employees, were intended to influence, inform, or reach, directly or indirectly, governmental agencies. . . . The statements cannot be considered petitioning activity merely because they communicated to the Hospital staff what remedial action the Hospital was taking as a response to a regulatory agency investigation."

The judge did not abuse her discretion. As a matter of law, the hospital's decision to terminate the employment of all employees in the adolescent psychiatric unit (unit) was conduct, not speech, and is not entitled to the protection of the anti-SLAPP statute. See Marabello, 463 Mass. at 398-400. The fact that the hospital explained its actions to its employees does not transform conduct into petitioning activity. A "tangential statement[]" that "concerns a topic that has attracted governmental attention . . . does not give that statement the character contemplated by the statute." Global NAPS, Inc. v. Verizon New England, Inc., 63 Mass. App. Ct. 600, 605, 607 (2005). That the e-mail may have been part of an over-all strategy to address the conditions in the unit and thereby avoid the wrath of the regulators is not enough. "[A]n over-broad construction of the anti-SLAPP statute would compromise the

nonmoving party's right to petition -- the same right the statute was enacted to protect." Kobrin, 443 Mass. at 335.[5]

It is not clear from the judge's decision whether she did not credit Walczak's affidavit or whether, even if she accepted it at face value, she found the affidavit was insufficient to show that petitioning activity was the sole basis for the e-mail, or both. See Wenger, 451 Mass. at 5, quoting from Duracraft, 427 Mass. at 167-168 (movant must show that the claim "[is] based on 'petitioning activities alone and ha[s] no substantial basis other than or in addition to the petitioning activities'"). The judge's decision is properly sustained on either basis.

First, for the reasons stated above, the judge did not abuse her discretion to the extent that she declined to credit Walczak's affidavit. See Cadle, 448 Mass. at 250. The judge considered the affidavit[6] and found it unpersuasive in light of the complete absence of any evidence that the e-mail was sent to the regulators. In this factual context, the judge did not

---

[5] It is particularly important to note that the e-mail went further than the report prepared by Attorney Scott Harshbarger and could be read to suggest that the fired employees were responsible for the incidents leading to the investigation. It is these statements in particular which the plaintiffs allege were defamatory.

[6] The affidavits were discussed at length in the motion hearing, and the judge stated on the record her intention to consider them.

engage in a clear error in judgment in concluding that the affidavit, crafted after the fact for purposes of supporting the special motion, failed to sustain the defendants' burden to show that Walczak engaged in petitioning activity. The statements in the affidavit concerning the defendants' motives and beliefs are not relevant. "We care not whether a defendant seeking dismissal under the anti-SLAPP statute is 'sincere' in his or her statements; rather, our only concern, as required by the statute, is that the person be truly 'petitioning' the government in the constitutional sense." Kobrin, 443 Mass. at 338 n.14.

Second, even if the judge were to give weight to Walczak's statement that he hoped to influence the regulators (which she clearly did not in view of the lack of any indication that the regulators knew of the e-mail's existence), or to simply accept the statements at face value, Walczak also stated that he "sent this email . . . to communicate to the hospital employees what was happening."[7] On its face, the e-mail served patient care and

---

[7] In his affidavit, Walczak stated that he sent the e-mail for the purpose of

"reaffirming Carney Hospital's commitment to providing the best possible care to every patient that comes through the doors and explaining the reasons why I decided to terminate the employment of individuals who, in my view, had not lived up to that standard. I sent this email not only to communicate to the hospital employees what was happening, but to give assurances to the regulatory agencies who were

labor relations purposes separate and independent of any claimed attempt to influence regulators. The anti-SLAPP statute protects a narrow range of conduct based solely and exclusively on petitioning activity. See Ehrlich, 74 Mass. App. Ct. at 536-537. See also Duracraft, 427 Mass. at 167-168. Even if one were to accept the defendants' view that the e-mail must be viewed as petitioning activity as a matter of law (which both the majority and I do not), the e-mail also served nonpetitioning purposes. Thus, the plaintiffs' complaint "[did] not concern solely the defendants' pursuit of legal rights." Ayasli v. Armstrong, 56 Mass. App. Ct. 740, 748 (2002), quoting from Bell v. Mazza, 394 Mass. 176, 183 (1985).

For this reason above all others, the judge also correctly ruled as a matter of law that the motion should be denied. It bears remembering that the "sole purpose" doctrine came about as a judicial gloss -- a gloss designed to save the statute from constitutional infirmity.[8] In Duracraft, 427 Mass. at 167, the Supreme Judicial Court "adopt[ed] a construction of [the words]

in the process of determining whether Carney Hospital's license to operate the Unit should be revoked that the deficiencies which has [sic] been reported on the Unit would not continue in that Unit or be tolerated in any other part of Carney Hospital" (emphasis added).

[8] The cases emphasizing the importance of the "sole purpose" test are legion. See, e.g., Fabre v. Walton, 436 Mass. at 524; Office One, Inc., 437 Mass. at 122; Cadle, 448 Mass. at 250; Wenger, 451 Mass. at 5; Fustolo v. Hollander, 455 Mass. 861, 865 (2010); Ehrlich, 74 Mass. App. Ct. at 536-537.

'based on' that would exclude motions brought against meritorious claims with a substantial basis <u>other than or in</u> <u>addition to</u> the petitioning activities implicated" (emphasis added). By limiting anti-SLAPP motions to those cases where the <u>only</u> basis for the plaintiffs' complaint is the defendants' nonfrivolous petitioning activity, the court resolved the "conundrum [that had] troubled judges and bedeviled the statute's application" -- that is, how to protect the defendants' right to petition the government, provided the petition is not a sham, while at the same time also protecting an adverse party's right to petition. <u>Id</u>. at 166-167. See <u>Kobrin</u>, 443 Mass. at 335.

The statements attributed to Walczak in the newspaper articles suffer from precisely the same defects as the e-mail. The judge found the statements to the Boston Globe to be tangential, "particularly when the defendants already were in communication with the agencies." In addition, the Walczak affidavit states that his comments to the Globe were an appeal to the public, an understandable purpose in light of the potential impact of the allegations on the confidence of patients, donors, insurers, and business partners, but still a nonpetitioning purpose.[9] On its face, the Walczak affidavit

---

[9] In his affidavit, Walczak stated that he spoke to the newspaper because "I felt that it was important that I explain

demonstrates that the statements to the press encompass substantial nonpetitioning purposes.[10]

It matters not that the statements to the press (like the e-mail) may have been part of an over-all strategic mission to influence regulators. See _ante_ at    .  Nor does it matter, for First Amendment purposes, that a single act -- the statements to the Globe -- may arguably serve both petitioning and nonpetitioning purposes.  If the conduct complained of serves a substantial nonpetitioning purpose (such as persuading patients, future patients, donors, future donors, insurers, and the public at large of the quality of patient care), the complaint must go forward.  Otherwise, the scope of the anti-SLAPP statute would expand exponentially to include protected First Amendment petitioning activity.  The result would be an interpretation of the statute that renders it constitutionally infirm.  See _Duracraft_, 427 Mass. at 166-167; _Kobrin_, 443 Mass. at 335.

---

to the media, and hence to the general public and the agencies themselves, why Carney Hospital took the actions that it did, and what our plans were for ensuring the safety and care of our patients going forward" (emphasis added).

[10] In this regard, there is a "consequential distinction" between Harshbarger and his law firm (Proskauer defendants) and the Steward defendants.  See _ante_ at    .  The Proskauer defendants were hired to assist in influencing the regulators.  The Steward defendants had safety, labor relations, institutional, and commercial interests apart from the regulatory proceedings.

However, because I agree with the majority that the statements in the press, made in response to the Massachusetts Nurses' Association's comments on the terminations, were protected by the mirror image doctrine, I also must agree, based on our existing precedent, that the statements to the Globe acquired the status of protected petitioning activity.  See Wynne v. Creigle, 63 Mass. App. Ct. 246 (2005).  Contrast Cadle, 448 Mass. at 251 ("Here, nothing in the record would support a finding that the challenged statements made by Schlichtmann were either a response to statements that Cadle had made to the press or repetitions of statements initially made in a governmental proceeding").  Other than the brief reference in Cadle, the mirror image doctrine has not been considered in any depth by the Supreme Judicial Court, and its parameters have not been much explored by this court.  Whatever those parameters may be, I concur with the majority that the fact that the hospital was responding to (not initiating) a press inquiry, and that the response essentially mirrored the statements in the report prepared by Attorney Scott Harshbarger, compels the conclusion that this much of the claim is petitioning activity under existing precedent.

Which leads to the final conundrum -- the ultimate disposition of the defamation claim.  In Wenger, 451 Mass. at 9, the Supreme Judicial Court, without discussion, parsed a

complaint, count by count, dismissing some counts under the anti-SLAPP statute and preserving others. This approach has borne some criticism, on the theory that parsing claims undermines the "sole purpose" doctrine and results in expensive and complicated litigation contrary to the purpose of the anti-SLAPP statute. See One Claim at a Time: The Inherent Problems with Piecemeal Application of the anti-SLAPP Statute, Vol. 11-n1 Mass. Bar Assn. Section Rev. (2009). Wenger remains good law, however, and we follow it.[11]

This case is different in that it involves a single count alleging two separate acts of defamation. One of our cases since Wenger has explicitly stated that "the anti-SLAPP inquiry produces an all or nothing result as to each count the complaint contains. Either the count survives the inquiry or it does not, and the statute does not create a process of parsing counts to segregate components from those that cannot." Ehrlich, 74 Mass. App. Ct. at 536, and cases cited. Accord Burley, 75 Mass. App. Ct. at 821. The majority holds that the statements to the Globe could have as easily been pleaded as two counts rather than one, and that it would elevate form over substance to permit the count based on the statements to the Globe to go forward, thus distinguishing Ehrlich. Whether Wenger governs in this

---

[11] Indeed, the defamation count here is but one of many counts, and has been considered separately at all stages of the litigation in accordance with Wenger.

circumstance as well, or whether Ehrlich is the correct statement of the law turns, as does much of this case, on further clarification of the reach of the "sole purpose" doctrine first articulated in Duracraft.

Accordingly, I concur in the result solely because I agree with those portions of the majority opinion that hold that the e-mail was not petitioning activity and the statements to the Boston Globe were protected by the mirror image doctrine under existing precedent.